ECHOSTAR SATELLITE CORPORA-
TION, a Colorado corporation, Echo-
sphere Corporation, a Colorado corpora-
tion, and Charles Ergen, Plaintiffs,

v.

ADVANCED COMMUNICATIONS COR-
PORATION, an Arkansas corporation,
and Daniel H. Garner, Defendants.

No. 94 N 2497.

United States District Court,
D. Colorado.

Oct. 13, 1995.

**214**

Thomas J. Overton, Overton & Feeley, P.C., Denver, CO, T. Wade Welch, Hecht & Welch, L.L.P., Houston, TX, for plaintiffs.

Stephen C. Peters, Reinhart, Boerner, Van Deuren Norris & Rieselbach, P.C., Denver, CO, Robert M. Cearley, Jr., Cearley Law Firm, Little Rock, AR, for defendants.

## MEMORANDUM OPINION AND ORDER

NOTTINGHAM, Judge.

This is a business dispute involving two entities engaged in the business of securing governmental approval for placement of communications satellites at specified orbital locations and then placing the satellites. The matter is now before the court on numerous post-trial motions. For purposes of deciding the motions, the facts giving rise to the dispute are of less importance than the procedural course of the trial.

Plaintiffs chose to present a good deal of their trial testimony by videotaped depositions. This was no amateur presentation, where a lawyer inserted a videotape into a monitor and used a simple remote-control device to play and manipulate the tape. It was technology at its highest extreme. Plaintiffs' side of the courtroom was bedecked with a bank of futuristic-looking machines, including a computer unit, from which cords and wires extruded like strands of spaghetti. At the center of it all was a busy man who, at any signal from counsel, could manipulate buttons and a keyboard so as to instantly zero-in on the precise portion of the deposition to be played. This man, I am told, was a "videographer."

Plaintiffs, having won enough of the case to be regarded as the "prevailing party" within the meaning of Fed.R.Civ.P. 54(d)(1), sought their costs. The clerk taxed costs, in the amount of $18,315.85, in favor of plaintiffs. More than half of these costs—$11,800—consist of various charges related to the process of taping, editing, and playing the videotaped depositions. Specifically, the clerk taxed the following costs:

(1) "Court Room System" ($3,500). This was the charge for use of the electronic equipment already described.

(2) "Editing and Logging of Videos" 21 hours @ $120/hr. ($2,520).

(3) "Time Code Dubbing of Videos" 38 hours @ $30/hr. ($1,140). This time code was the device which permitted the technician to zero-in on precise parts of the deposition.

(4) "Court Room Playback" 32 hours @ $55/hr. ($1,760). Since the minutes reveal that the videos were not played for thirty-two hours, some of this expense appears to represent the videographer's charges for being available.

(5) Videotaping the depositions of James Beggs and John Toney ($950). These videos were played at trial.

(6) "Court Room Monitors/Carts" ($480).

(7) Videotaping of Defendant Dan Garner's Deposition. ($1,450). The stenographic transcript of Garner's deposition was used at trial to impeach his trial testimony.[*] The video was not used, but plaintiffs argue that it was needed in the event he failed to appear at trial.

Defendants now object to the clerk's decision taxing this $11,800 in costs. Plaintiffs object to the clerk's work, too, arguing, in part, that the clerk should have taxed an additional $7,920 for overtime pay incurred in editing and logging the videotapes. Plaintiffs also advance other objections which do not relate to the issue of whether the expense of taking

---

[*] In their own separate motion, plaintiffs incorrectly claim that the clerk failed to tax the cost of a stenographic transcript of Garner's deposition.

The bill of costs on file reveals that the transcript was taxed.

and playing videotaped depositions can be taxed as costs. These will be separately addressed later.

## I

## THE VIDEOTAPED DEPOSITIONS

■ Analysis of the issue must begin with the statute governing taxation of costs, which allows taxation of "[f]ees of *the* court reporter for all or any part of *the* stenographic transcript necessarily obtained for use in the case." 28 U.S.C.A. § 1920(2) (West 1994) (emphasis supplied). Although use of the definite article "the" might seem to indicate that the statute pertains to "the" stenographic transcript of trial prepared by "the" official court reporter (for purposes of an appeal, for example), the books are replete with authority, including authority binding on this court, holding that "the cost of taking and transcribing depositions fits within subsection 2." *E.g., Ramos v. Lamm,* 713 F.2d 546, 560 (10th Cir.1983); *see also Furr v. AT & T Technologies,* 824 F.2d 1537, 1550 (10th Cir. 1987).

■ The next issue is what part of the costs sought here represent the fees of the "court reporter" for the "stenographic transcript." Defendants assert, without contradiction by plaintiffs, that they have stipulated to the costs of preparing, transcribing, and delivering deposition transcripts. Thus, the items at issue are the other costs enumerated above. If the English language is to retain any meaning in these matters, I do not see how a videotape can be a "stenographic transcript." Indeed, the rule under which depositions in this case were taken expressly distinguishes between "sound-and-visual" means of recording testimony and "stenographic" means of doing so. Fed.R.Civ.P. 30(b). The expense associated with making and playing the videotape is simply not a "stenographic transcript." In my view, then, the costs recoverable under section 1920(2) relate to the court reporter's fee for attending, transcribing, and delivering the transcript of the deposition. This court lacks authority to tax a cost not enumerated in section 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 440–42, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987) (no reasonable reading of

section 1920 and rule 54 can lead to the conclusion that section 1920 allows "taxation of costs above and beyond the items listed"); *Coats v. Penrod Drilling Corp.,* 5 F.3d 877, 891 (5th Cir.1993) (affirming refusal to tax video technician fees incurred for video depositions).

Despite the language of section 1920, a number of courts have allowed taxation of the costs associated with the videotaping of a deposition. *See, e.g., Barber v. Ruth,* 7 F.3d 636, 645 (7th Cir.1993). Such decisions are driven by the view that "videotaped depositions are a necessary and time effective method of preserving witnesses' time and allocating precious court and judicial time in this age of advanced court technology and over-crowded court calendars. We must not seem reluctant to adopt any and all time-saving methods that serve to improve our system of justice." *Commercial Credit Equip. Corp. v. Stamps,* 920 F.2d 1361, 1368 (7th Cir.1990).

Those courts which have unmoored themselves from the constraints imposed by section 1920 have drifted into irreconcilable results on the issue of exactly what should be taxed. Some courts have taxed the expense of *both* the court reporter's fee for a stenographic transcript *and* the expense of taking and showing a videotape. *See, e.g., Meredith v. Schreiner Transp., Inc.,* 814 F.Supp. 1004, 1006 (D.Kan.1993); *Molnar v. Elgin, Joliet & E. Ry. Co.,* 697 F.Supp. 306, 312 (N.D.Ill. 1988). While this is arguably duplicative, it does appear consistent with Fed.R.Civ.P. 26(a)(3)(B), which requires pretrial disclosure of witnesses whose testimony is to be presented by way of deposition "and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony." If the expense of the videotape itself is regarded as a taxable cost, it is hard to see the logic of refusing to tax the stenographic transcript, disclosure of which appears to be a condition of using the videotape. *See* Fed. R.Civ.P. 37(c) (failure to disclose rule 26[a] information ordinarily precludes use of information at trial). Other courts, however, have allowed taxation of the expenses associated with videotaping, but not the stenographic transcript. *See, e.g., Commercial Credit*

*Equip. Corp.,* 920 F.2d at 1369; *Jamison v. Cooper,* 111 F.R.D. 350, 352 (N.D.Ga.1986); *Sack v. Carnegie Mellon Univ.,* 106 F.R.D. 561, 564 (W.D.Pa.1985). Ignoring the language of section 1920, these courts reason that Fed.R.Civ.P. 30(b)(4) authorizes "substitution of a videotape for a stenographic transcript" and precludes an award of costs for the stenographic transcript by mandating "that '[a] party may arrange to have a stenographic transcription made *at the party's own expense.'*" *Barber v. Ruth,* 7 F.3d at 645 (emphasis supplied).

Courts awarding costs for videotaping have also arrived at contradictory conclusions concerning how much of the videotaping expense should be taxed. One court has allowed the full cost of the stenographic transcript under section 1920(2) but limited taxation of the videotaping charge to the amount of the statutory witness fee. *Fressell v. AT & T Technologies, Inc.,* 103 F.R.D. 111, 116 (N.D.Ga.1984). Its theory was that this "more effective, although more expensive" way of preserving the witness's testimony is to be treated as a "variant form of a witness fee" under section 1920(3). *Id.* Other courts have allowed the full charge for videotaping and playing the recording in court, without limiting the amount to the statutory witness fee. *See, e.g., Deaton v. Dreis and Krump Mfg. Co.,* 134 F.R.D. 219, 222 (N.D.Ohio 1991).

In addition to ignoring the admonition of the Supreme Court in *Crawford Fitting* and drifting from the plain statutory language of 28 U.S.C.A. § 1920 into a confusing welter of rules based on a variety of policy preferences, the cases allowing taxation of video expenses appear to be based on a questionable policy premise: that shifting of videotaping expenses to the losing party is a necessary and appropriate means of encouraging the use of video technology. *See, e.g., Commercial Credit Equip. Corp.,* 920 F.2d at 1368. I doubt that cost shifting has any effect on the use of videotaped depositions, especially in light of the fact that courts are divided on whether such costs can be shifted. Parties who can afford this currently-expensive technology will continue to use it where circumstances warrant, taxable or not, because a videotape is usually more persuasive than a cold transcript droned into the record by someone other than the witness. Moreover, it does not follow that parties who choose use of this technology to enhance presentation of their case should, as a matter of course, be able to shift the considerable cost of this technology to the losing side (which sometimes cannot afford the convenience of videotape). Redistributing litigation costs involves public policy issues broader than the issue of whether cost-shifting will encourage use of a litigation tool generally thought to be a good thing. *See generally Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). That is why it should be left to Congress.

## II

### PLAINTIFFS' REMAINING CHALLENGES TO CLERK'S TAXATION OF COSTS

#### A. Exhibits

Section 1920(4) allows taxation of expenses for "copies of papers necessarily obtained for use in the case." Here, the parties agreed to the use of enlarged copies of certain exhibits. Plaintiffs used all of their enlargements at trial, and they argue that the clerk erred in refusing to tax the $1,665.84 expended in making the enlargements. At least where the parties agree to use of enlargements, the expense of making the enlargements is taxable under section 1920(4). *Nissho–Iwai Co., Ltd. v. Occidental Crude Sales, Inc.,* 729 F.2d 1530, 1553 (5th Cir.1984); *Soler v. McHenry,* 771 F.Supp. 252, 256 (N.D.Ill.1991), *aff'd sub nom. Soler v. Waite,* 989 F.2d 251 (7th Cir.1993). Where, as here, witnesses in a complex commercial case are questioned extensively in front of the jury about the contents of documents, such enlargements (or other means of contemporaneously placing the documents before the jurors) are necessary for the jury to follow the testimony. The costs in question should be allowed.

Citing section 1920(4) again, plaintiffs also fault the clerk for refusing to tax the cost of copying certain exhibits into eight

notebooks for the jurors. I refuse the request to tax these costs for two reasons. First, to some extent, the juror notebooks would have served the same general purpose as the enlargements, which are being taxed as costs. It was not necessary to accomplish this purpose by two different means, and plaintiffs have supplied me with no information which would permit elimination of those charges which are duplicative. Second, the court sustained defendants' objection to publication of the exhibits in the juror notebooks. I decline to reallocate the cost of preparing materials which were of no assistance in the jury's determination of the issues.

### B. Deposition Transcripts Not Actually Used at Trial

■ The clerk, who had before him only the minutes prepared by the courtroom deputy, taxed the expenses of all depositions read into evidence and all depositions used to impeach witnesses' trial testimony. He refused to tax the cost of deposition transcripts not used in any way at trial because he was in no position to evaluate whether they were "necessarily obtained for use in the case." 28 U.S.C.A. § 1920(2). Actual use of a deposition during the case is a practical way of determining whether a deposition is "necessarily obtained for use in the case," first, because it is convenient and easy to ascertain whether the deposition was used in some manner during the proceedings and, second, because actual use during the case is fairly persuasive evidence that the deposition was necessarily obtained for use in the case. There is, however, considerable authority for the proposition that whether a deposition "is necessary for use in the case is not to be determined solely by whether the deposition was used at trial or in ruling on pending motions." *Burt v. Manville Sales Corp.,* 706 F.Supp. 755, 757 (D.Colo.1988). The line to be drawn here is a blurry and meandering one: if a deposition was "purely investigative in nature," *e.g., Koppinger v. Cullen–Schiltz & Assocs.,* 513 F.2d 901, 911 (8th Cir.1975), or if it was "merely useful for discovery," *e.g., Independent Iron Works, Inc. v. United States Steel Corp.,* 322 F.2d 656, 678 (9th Cir.1963), it falls on the non-taxable side of the line.

A few of the depositions in question are those of Defendant Advanced Communications Corporation's officer, Donald Dement, and three of its corporate attorneys. I infer from their trial testimony that their central role in the negotiations and course of conduct at issue in the case was known from the start of the case. They were consistently listed as witnesses who would be present at trial. Dement and one of the attorneys did testify. The other lawyers did not testify, but the decision not to call them was one made by defendants at trial. Plaintiffs had no choice but to take the depositions of all three lawyers. I therefore credit as probable and realistic plaintiffs' argument that the depositions were used to prepare cross-examination of these witnesses and that counsel obtained the depositions for use as substantive trial evidence and/or impeachment material. The costs of these stenographic transcripts (**$1,235.45**) should be taxed in favor of plaintiffs.

■ I am not persuaded by plaintiffs' showing with respect to the remaining depositions at issue. According to plaintiffs' argument, one deposition was taken "in order to understand the circumstances surrounding the preparation of" a certain exhibit. The others were taken to determine the purpose of "certain calls and discussions" preceding a meeting between defendants' representatives and the deponent or "to learn the contents" of other discussions. I infer that these depositions were taken for discovery and investigative purposes. The clerk properly disallowed these costs.

### III

### MOTIONS TO AMEND JUDGMENT

■ The motions to amend the judgment are without merit. Plaintiffs urge that the court amend the judgment so as to allow prejudgment interest to run through the date judgment was entered (July 31, 1995). As the jury found, defendants wrongfully withheld $1,000,000 from plaintiffs, commencing on November 13, 1992. On January 6, 1995, defendants paid plaintiffs the $1,000,000, and the court thus awarded prejudgment interest

from November 13, 1992, through January 6, 1995. The controlling Colorado statute allows interest on money wrongfully withheld "from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs." Colo.Rev. Stat. § 5–12–102 (1992 Repl.Vol.). The judgment correctly awards interest through January 6, 1995, the date of payment.

For their part, defendants quarrel with the rate which the court established as the "gain or benefit realized by the person withholding ... money." *Id.* The chosen rate, eleven percent, was based on the testimony of Defendant Daniel Garner. Garner testified that he was borrowing money at eleven percent while he was withholding plaintiffs' money. He promptly "clarified" this answer by saying that he was borrowing at five points over the discount rate and that the discount rate was six percent. Defendants now seek to introduce new evidence (and impeach Mr. Garner) by providing an unauthenticated table appearing to demonstrate that the discount rate varied and was always below six percent. This evidence was available at trial, and defendants had ample opportunity to develop it. It is unnecessary, unfair, and wasteful to re-open the evidence and amend the judgment at this time.

## IV

### CONCLUSION

In accordance with the foregoing findings and conclusions, it is

ORDERED as follows:

1. The motions to amend the judgment are denied.

2. Defendants' petition to review costs is granted. The $11,800 in costs attributable to the taking and playing of videotaped depositions is disallowed.

3. Plaintiffs' motion to review costs is granted in part. The costs for enlarged exhibits ($1,665.84) and for certain deposition transcripts ($1,235.45) are allowed. In all other respects the motion is denied.

4. Costs in the amount of $9,417.14 are allowed.

5. Defendants' motion for stay of execution, seeking a stay until disposition of the motion to amend judgment, is denied as moot.