**Frank D. RODRIGUEZ and Ronald White, Plaintiffs,**

v.

**Aristedes ZAVARAS, et al., Defendants.**

**No. CIV. A. 94–N–270.**

United States District Court,
D. Colorado.

Oct. 1, 1998.

Michael J. Heher, Public Defender's Office, Appellate Div., David H. Miller, Miller, Lane & Killmer, Denver, CO, for Plaintiffs.

Diane Marie Michaud, Assistant Attorney General, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

NOTTINGHAM, District Judge.

Plaintiff Frank D. Rodriguez seeks an award of attorneys' fees and costs as the prevailing party in a civil-rights action. He bases his request upon 42 U.S.C.A. § 1988 (West 1994). The matter is before the court on (1) "Plaintiff's Motion for Attorneys Fees and Costs," and (2) "Plaintiff's Supplemental Motion for Attorneys Fees and Costs." The primary issue presented, on which there is no controlling precedent from the United States Court of Appeals for the Tenth Circuit, is whether the fee-limiting provisions of the Prison Litigation Reform Act ("PLRA") of April 26, 1996 apply to any extent to a case which has been pending before this court since 1992. Other issues require the court to apply existing law and determine whether

Rodriguez was a prevailing party and whether he should be awarded certain specified costs.

## FACTS

On March 4, 1992, Rodriguez, a prisoner in the custody of the Colorado Department of Corrections, filed a complaint in this court concerning conditions at the Centennial Correctional Facility ("CCF"). In September 1993, Rodriguez was transferred from CCF to the Colorado State Penitentiary ("CSP"). On September 13, 1993, I ordered Rodriguez's complaint stricken, without prejudice, because a state public defender represented him in violation of Colorado statute. (Order & Mem. of Decision at 5 [filed Sept. 13, 1993].)

On September 21, 1993, David H. Miller, a private attorney, was appointed as counsel for Rodriguez. (Order Appointing Attorney [filed Sept. 21, 1993].) According to Miller, he served until April 1, 1996, as Legal Director of the American Civil Liberties Union of Colorado and represented Rodriguez in that capacity. (Pl.'s Mot. ¶ 1 & n. 1.) Miller, and other counsel, have thereafter represented Rodriguez as the firm of Miller, Lane & Killmer. (Id.)

On November 6, 1993, the Department of Corrections ("DOC") began videotaping attorney-client visits at the CSP. On February 1, 1994, Plaintiff Ronald White, a prisoner at the CSP, filed a complaint in this court in which he challenged the constitutionality of the videotaping. On February 4, 1994, this court entered a temporary restraining order in White's case, which prohibited videotaping of his attorney visits. On February 7, 1994, the temporary restraining order expired pursuant to its own terms. Nevertheless, on March 2, 1994, the DOC permanently stopped videotaping attorney-client visits at CSP.

Miller had taken no action in Rodriguez's case from the time of his appointment as Rodriguez's counsel in September 1993, until August 1994. On August 12, 1994, I ordered Rodriguez to show cause as to why his case should not be dismissed for failure to prosecute it. (Order [filed Aug. 12, 1994].) On

August 31, 1994, Rodriguez responded and moved to amend his complaint. October 3, 1994, I granted his motion and Rodriguez filed his amended complaint. (Am. Compl. [filed Oct. 3, 1994].) On March 1, 1995, Rodriguez filed a second amended complaint. (Second Am. Compl. [filed Mar. 1, 1995].)

On November 8, 1996, Rodriguez and White moved to consolidate their cases. On November 14, 1996, I granted the motion and ordered the two cases consolidated. I also set the consolidated cases for trial beginning January 27, 1997. On January 16, 1997, pursuant to rule 68 of the Federal Rules of Civil Procedure, defendants delivered to Rodriguez an offer of judgment. On January 17, 1997, Rodriguez accepted their offer of judgment. In accordance with the offer and acceptance, I entered judgment in Rodriguez's favor and against defendants. (Order [filed Jan. 17, 1997].) Specifically, I:(1) ordered the defendants to destroy all videotapes of attorney-inmate visits; (2) enjoined defendants from videotaping visits between Rodriguez and his attorneys at the CSP, excepting emergencies; (3) prohibited defendants and CSP correctional officers from observing the contents of documents and from overhearing normal conversation levels during Rodriguez's attorney visits; and (4) awarded Rodriguez reasonable and appropriate fees and costs accrued in the case until January 16, 1997. (*Id.*)

On January 24, 1997, Rodriguez filed a motion for attorneys' fees and costs. (Pl.'s Mot. for Attorneys Fees and Costs [filed Jan. 24, 1997] [hereinafter "Pl.'s Mot."].) Rodriguez contends that, as the prevailing party, he is entitled to an award of (1) attorneys' fees in the amount of $98,478.75, and (2) costs in the amount of $3,415.64. (Pl.'s Mot. at 5–6.) On February 6, 1997, Rodriguez filed a supplemental motion seeking fees and costs of $3,420.00 incurred between January 31, 1997, and February 5, 1997. (Pl.'s Supplemental Mot. for Attorneys Fees and Costs [filed Feb. 6, 1997] [hereinafter "Pl.'s Supplemental Mot."].)

Rodriguez argues that his claims stem from a common core of operative facts relating to allegations that defendants interfered with the confidentiality of his attorney-client communications. He further claims that he is entitled to be fully compensated for attorneys' fees and costs because of the "significant overall equitable relief [he] obtained." (Pl.'s Mot. ¶ 7.) He claims the fees and costs incurred were "necessarily and reasonably expended." (*Id.* ¶ 8.) According to Rodriguez's attorneys, their time and costs were "contemporaneously and accurately recorded" and they exercised "reasonable and professional billing judgment so as to eliminate unnecessary or otherwise objectionable hours and expenses." (*Id.* ¶ 9.) In particular, Rodriguez's attorneys modified their raw billing data to: (1) subtract twenty hours from a total of over sixty-six hours expended by Miller in researching and drafting Rodriguez's opposition brief to defendants' motions to dismiss and for summary judgment; (2) omit Michael Heher's time of one hundred hours expended on behalf of Plaintiff Ronald White; (3) bill for only one attorney's time where more than one was involved (e.g., meeting together, multiple attendees at same meeting or hearing); and (4) deduct charges for in-house copying ($480) and long-distance phone calls ($200). (*Id.* ¶ 10.) Defendants argue that: (1) the PLRA governs Rodriguez's fee application, or, alternatively, fees incurred after the PLRA's effective date; (2) Rodriguez is not a prevailing party and is therefore not entitled to attorneys' fees; (3) any fees awarded must be restricted to those "directly and reasonably incurred" in obtaining relief; and (4) costs should be denied, in part. (Defs.' Resp.)

## ANALYSIS

### 1. Application of the PLRA

The PLRA became effective April 26, 1996, and provides in pertinent part as follows:

(d) Attorney's fees

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that—

(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected

by a statute pursuant to which a fee may be awarded under section 1988 of this title; and

(B) (i) the amount of the fee is proportionately related to the court ordered relief for the violation; or (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

. . . . .

(3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel.

42 U.S.C.A. § 1997e. Rodriguez argues that, because the PLRA became effective in 1996, four years after he initiated suit, its provisions do not apply to any part of his fee application—including the part representing time spent after the effective date of the Act. Defendants respond that the Act applies to every part of plaintiff's fee application. Because of a severe split among the courts of appeal, there is persuasive authority for both positions—as well as for the intermediate position that the Act applies only to fees representing time expended *after* its effective date.

■ The United States Supreme Court has prescribed the method for analyzing the applicability of a new statute to events happening before the statute's effective date. "When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994). When a statute lacks an express command, "the court must determine whether the new statute would have a retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If a statute has a "retroactive effect," a court should not apply it absent clear congressional intent otherwise. *Id.*

■ Following *Landgraf*, I first consider whether Congress has expressly prescribed the proper reach of section 1997e. Noting that section 1997e applies "[i]n *any* action brought by a prisoner" (emphasis supplied), two courts of appeal have treated this language as sufficient to expressly prescribe the statute's temporal reach and have held that the statute unequivocally applies to limit all fee awards made after its effective date, even if the work was performed before the effective date. *Madrid v. Gomez*, 150 F.3d 1030, 1035 (9th Cir.1998); *Alexander S. v. Boyd*, 113 F.3d 1373, 1385–88 (4th Cir.1997). These decisions rest on the proposition that the single word "any" is sufficiently encompassing to unambiguously prescribe the temporal reach of the statute, as well as the types and categories of action to which it applies. In *Madrid*, for example, the Ninth Circuit relies on a dictionary definition of the word which does, indeed, seem all-inclusive at first glance. *See Madrid*, 150 F.3d at 1036 (citing Webster's Ninth New Collegiate Dictionary 93 [1st ed.1986] ). Unfortunately for its argument, the court simply ignores several other dictionary definitions of the word "any," none of which contains a temporal element and few of which are as encompassing as the one selected by the court. (*See* Webster's Third New International Dictionary [Unabridged] 96 [1986] ). The omission of any express congressional directive concerning the statute's temporal reach cannot, in this instance, be cured by selecting one of several senses in which a word may be used and assuming that Congress used it in that sense. Accordingly, I conclude that Congress did not expressly prescribe the proper reach of section 1997e. *See Jensen v. Clarke*, 94 F.3d 1191, 1202 (8th Cir.1996). I must therefore reach the question whether the provisions of section 1997e have a "retroactive effect." *Landgraf*, 114 S.Ct. at 1505.

Although the courts of appeal are divided, two circuits which have addressed the application of the PLRA's attorney fee provisions have concluded that section 1997e does not apply to fees incurred before the Act's effective date, reasoning that trying to apply the Act in this manner would constitute an impermissible retroactive application. *Cooper*

*v. Casey,* 97 F.3d 914, 921 (7th Cir.1996); *Jensen,* 94 F.3d at 1202–03. I agree with the Seventh Circuit's reasoning in *Cooper* that to apply section 1997e(d) retroactively "would attach (without clear indication of congressional intent to do so) new legal consequences to completed conduct, namely the services rendered by the plaintiff['s] counsel in advance of the passage of [the PLRA]." *Cooper,* 97 F.3d at 921 (citations omitted). I therefore do not apply the PLRA to fees incurred before April 26, 1996.

■ Having determined that section 1997e should not apply retroactively to fees for time spent before the effective date of the PLRA, I must consider whether the Act can nonetheless apply to fees for time spent after the Act's effective date. According to one court of appeals, the determination that the PLRA cannot apply retroactively to fees incurred before its effective date ineluctably compels the conclusion that the Act likewise cannot apply to fees incurred after its effective date. *See Hadix v. Johnson,* 143 F.3d 246, 252 (6th Cir.1998). According to *Hadix,* Congress could not have intended the fee provision to apply in pending cases for post-enactment fees but not for pre-enactment fees. "We do not believe the statutory language is capable of such a sophisticated construction; either the fee provision applies in pending cases or not." *Hadix,* 143 F.3d at 252. I conclude that this reasoning circularly misapplies the *Landgraf* retroactivity analysis. The necessity for such analysis is predicated on congressional silence or ambiguity concerning a statute's temporal reach; if Congress has spoken clearly, the courts must follow the congressional direction and need not get into questions concerning retroactivity. If, however, a court cannot divine the intent of Congress, then it applies a rule of construction—that the statute applies prospectively only. Holding that the PLRA applies to fees for time incurred after the effective date of the Act is a prospective application of the statute. Accordingly, I will apply the PLRA to fees incurred after April 26, 1996. *Accord, Williams v. Brimeyer,* 122 F.3d 1093, 1094 (8th Cir.1997); *Collins v. Algarin,* 1998 WL 10234 (E.D.Pa. Jan.9, 1998).

### 2. Fee Award

■ "In any action to enforce a provision of [42 U.S.C.A. § 1983] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C.A. § 1988. To determine if a party is a "prevailing party," I consider whether the case has resulted in a material alteration of the legal relationship of the parties. *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989). Where such a change has occurred, I then consider the degree of plaintiff's overall success and the reasonableness of the requested award. *Id.* at 793, 109 S.Ct. at 1494. Where a plaintiff has obtained "excellent results," his attorneys should recover a fully compensatory fee. *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). "[W]here the plaintiff achieve[s] only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440, 103 S.Ct. at 1943; *see Ramos v. Lamm,* 713 F.2d 546, 556 (10th Cir.1983).

■ The extent of a plaintiff's success is a crucial factor in determining a fee award, and the district court exercises its discretion in fashioning that award. *Hensley,* 461 U.S. at 436–37, 440 103 S.Ct. at 1941, 1943; *Ramos,* 713 F.2d at 556. Some civil-rights cases may present clearly distinct claims or only a single claim for relief. Other cases "will involve a common core of facts or will be based on related legal theories." *Id.* at 446, 103 S.Ct. at 1940. Cases in which a plaintiff relies on a common core of facts and related legal theories cannot be viewed as a series of discrete claims. *Id.* at 446, 103 S.Ct. at 1940. "Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 446, 103 S.Ct. at 1940; *see Jane L. v. Bangerter,* 61 F.3d 1505, 1512 (10th Cir.1995).

#### a. Reasonable Rate

■ Rodriguez claims his attorneys are entitled to hourly rates as follows: (1) David

H. Miller (DHM), David A Lane (DAL), and Darold W. Killmer (DWK) at $225 per hour; and (2) Paula Greisen (PG) at $175 per hour. Rodriguez's attorneys claim that these hourly rates are commensurate with reasonable hourly rates of other lawyers with similar experience and skill in the Denver legal community. (Pl.'s Mot. ¶¶ 12–13.) As defendants have not objected, I deem those rates reasonable for the services rendered before April 26, 1996.

For fees incurred by Rodriguez's counsel after the PLRA's effective date, section 1997e(d) invokes 18 U.S.C.A. § 3006A (West 1985 & Supp.1998) to prescribe the hourly rate. The hourly rate established by section 3006A for court-appointed counsel is $60 for in-court time and $40 for out-of-court time. Increasing those rates 150 percent, pursuant to section 1997e(d)(3), results in a rate of $90 per hour for in-court time and $60 per hour for out-of-court time for fees incurred by Rodriguez's counsel after April 26, 1996.

### b. Fee Adjustments

#### i. Rodriguez's Success—Prevailing Party Analysis

■ Rodriguez argues that his claims "stem from a common core of operative facts all relating to his allegations that defendants interfered with the confidentiality of attorney-client communications." (Pl.'s Mot. ¶ 7.) He maintains that because of the "significant overall equitable relief obtained," he should receive full compensation for attorneys' fees and costs. (Id.) According to defendants, Rodriguez is not a prevailing party for purposes of awarding attorneys' fees and costs pursuant to 42 U.S.C.A. § 1988. Defendants focus solely on claims and relief related to videotaping. They argue that, although Rodriguez complained of videotaping in his second amended complaint, the DOC had ceased videotaping at the time he filed his second amended complaint and his prayer for relief did not seek any relief from videotaping. (Defs.' Resp. at 7–9.)

As an initial matter, Rodriguez's second amended complaint challenged interferences with his attorney-client visits by monitoring, electronically and otherwise. (See Second Am. Compl. ¶¶ 1, 12, 25, 33–36.) Moreover, he sought relief from defendants' practice of "harassing counsel during attempts to have attorney-client visits with [Rodriguez]," (Second Am. Compl. ¶ B), and an injunction against defendants "preventing them and their agents from reading, censoring, seizing or otherwise interfering with materials of any sort which [Rodriguez's] counsel bring to visits with [him]," (id. ¶ F). Both of these requested forms of relief encompass the behavior which I ordered defendants to cease. (Order [filed Jan. 17, 1997]; J. [filed Jan. 24, 1997].) Additionally, although defendants may have previously stopped videotaping attorney-inmate visits voluntarily, nothing prevented them from reinitiating the practice. Contrary to defendants' suggestion, this case is unlike Collins v. Romer, 962 F.2d 1508 (10th Cir.1992) in that respect because, in Collins, the state legislature amended the statute which governed the practice challenged by the plaintiffs, thus addressing plaintiffs' concerns and requiring DOC compliance. Id. at 1511. Here, relief was not made permanent until judgment. Thus, Rodriguez is a prevailing party.

■ I conclude that Rodriguez's claims stemmed from a common core of facts related to interference in his attorney-client relationship. Rodriguez did not have total success, however, in that his claims regarding legal mail and telephone calls were not part of the judgment. Thus, although I conclude that Rodriguez is a prevailing party, I will reduce his fee award by thirty-three percent to reflect his partial success. See Hensley, 461 U.S. at 440, 103 S.Ct. at 1943; Ramos v. Lamm, 713 F.2d 546, 556 (10th Cir.1983).

#### ii. CCF–Related Fees

Defendants seek a reduction in any fee award for Rodriguez's allegations regarding conditions at the CCF where Rodriguez was incarcerated when he filed his initial complaint. My review of Rodriguez's billing data, however, indicates that his counsel did not include fees incurred during that time. I therefore make no reduction in the total hours billed based on this argument.

### iii. Fees For Claims Unrelated to Videotaping

 Defendants argue that, because Rodriguez prevailed only on the issue of videotaping and did not succeed in obtaining relief with regard to legal telephone calls, legal mail, scheduling of attorney visits, or the physical characteristics of the attorney visitation room, fees for depositions related to those claims should be eliminated. Defendants also seek a reduction of 20.9 hours incurred "concerning allegations related solely to legal mail." * (Defs.' Resp. at 14.) Because Rodriguez's claims are all related to interference with his attorney-client relationship, dividing the hours spent on a claim-by-claim basis is not warranted. *Hensley*, 461 U.S. at 446, 103 S.Ct. at 1940. I therefore decline to reduce the total hours billed for time spent on depositions and allegations related to issues other than videotaping.

### iv. Fees Incurred Prior to DOC Videotaping

Defendants object to 12.25 hours expended prior to commencement of videotaping at CSP. As discussed above, Rodriguez complained of and obtained relief related to more than videotaping. I therefore decline to reduce Rodriguez's fee application by those hours.

### v. Post–Offer–of–Judgment Fees

Defendants object to 16.1 hours which they claim were accrued after January 16, 1997, the date of the offer of judgment. My review of Rodriguez's counsels' billing information indicates, however, that counsel billed 12.8 hours after January 16, 1997, not 16.1 hours. The court's order limited costs and fees to those accrued until January 16, 1997. (Order [filed Jan. 17, 1997].) Accordingly, the hours expended on this fee application following entry of judgment will not be awarded. Rodriguez's motion for fees incurred between January 31, 1997, and February 5, 1997, is similarly denied.

---

* From review of Rodriguez's counsel's billing data, it is not apparent to the court how defendants reached 20.9 hours expended solely on

### c. Fee Calculation

Applying the rates described above to time spent before April 26, 1996, and to in-court and out-of-court time spent after April 26, 1996, and making the reductions discussed above results in a fee calculation as follows:

| | | | |
|---|---|---|---|
| DHM: | 175.55 pre–4/26/96 hours × $225 | = | 39,498.75 |
| DHM: | 250.25 hours out-of-court × $60 | = | 15,015.00 |
| DHM: | less 12.1 hours (post 1/16/97) × $60 | = | (726.00) |
| DHM: | 3.2 hours in court × $90 | = | 288.00 |
| PG: | 24.5 pre–4/26/96 hours × $175 | = | 4,287.50 |
| PG: | 3.85 hours out of court × $60 | = | 231.00 |
| PG: | 1.2 hours in court × $90 | = | 108.00 |
| PG: | less .7 hours in court (post 1/16/97) × $90 | = | (63.00) |
| DAL: | 1.8 hours out of court × $60 | = | 108.00 |
| DAL: | 1.7 in court × $90 | = | 153.00 |
| DWK: | 2.2 hours out of court × $60 | = | 132.00 |
| subtotal | | = | 59,032.25 |
| less 33% | | = | (19,480.64) |
| TOTAL: | | = | 39,551.61 |

### 3. Costs

 For items not included as attorneys' fees pursuant to section 1988, the general costs statute, 28 U.S.C.A. § 1920 (West 1994), determines their recoverability. 28 U.S.C.A. § 1920; *Ramos v. Lamm*, 713 F.2d at 560. Although courts have discretion in awarding costs, they should exercise that discretion sparingly with regard to costs not specified in the statute. *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1245 (10th Cir.1988). Rodriguez seeks $3415.64 in costs. (Pl.'s Mot. for Attorneys Fees and Costs, Attach. [Rodriguez's itemization of costs].) Defendants object to particular costs as unauthorized or unnecessary: (1) $332.39 for travel expenses; (2) $400 for videotape duplication; (3) $1705.00 for deposition transcripts; and (4) $462.50 for a contract paralegal's preparation of trial exhibits. (Defs.' Resp. at 15.) I address each separately.

### a. Travel Expenses

 Section 1920 does not authorize taxation of costs for travel expenses, and Rodriguez provides no authority for recovery of those expenses. *See Jane L.*, 61 F.3d at 1517 (affirming district court's rejection of travel expenses). Accordingly, I deduct $322.29 of travel expenses from Rodriguez's costs request.

---

legal-mail claims in Rodriguez's second amended complaint.

### b. Videotape Duplication

 Defendants contend that because they did not request the videotapes in discovery, Rodriguez is not entitled to recover the duplicating costs. Rodriguez does not indicate on what basis he is entitled to the costs. Accordingly, I deduct the $400 incurred in videotape duplication from Rodriguez's request.

### c. Deposition Transcripts

Taxation of costs incurred by a court reporter in taking depositions and making copies of deposition transcripts is authorized by section 1920. 28 U.S.C.A. § 1920(2), (4); *see Ramos,* 713 F.2d at 560. The fact that deposition transcripts were not used at any stage of the case is not fatal to Rodriguez's recovery. *See Voight v. Subaru–Isuzu Auto., Inc.,* 141 F.R.D. 99, 102–03 (N.D.Ind.1992). "The determination of necessity must be made in light of the facts known at the time of the deposition, without regard to intervening developments that later render the deposition unneeded for further use." *Id.* at 103. I conclude that the $1165 in deposition fees incurred are properly taxed as costs.

### d. Cost of Paralegal Preparing Exhibits

Defendants object to $462.50 incurred by Rodriguez in hiring a contract paralegal to prepare trial exhibits. Section 1920 has been interpreted to include the costs of exhibit preparation. *See Mikel v. Kerr,* 499 F.2d 1178, 1182–83 (10th Cir.1974). Accordingly, I find that the fees for compensating the paralegal in preparing the exhibits are properly taxed as costs.

### 4. Conclusion

Based on the foregoing, it is therefore

ORDERED as follows:

1. Rodriguez's motion for fees and costs is GRANTED in part and DENIED in part. Rodriguez is entitled to a fee award of $39,-551.61. Rodriguez is entitled to a costs award of $2693.25.

2. Rodriguez's supplemental motion for fees is DENIED.

3. All other pending motions are DENIED.