Reginald C. ROBERSON, Plaintiff,

v.

Mark BRASSELL, Defendant.

No. Civ.A. H–96–1780.

United States District Court,
S.D. Texas,
Galveston Division.

Dec. 3, 1998.

Jeffrey James Putnam, Royston Rayzor Vickery & Williams, Houston, TX, for Reginald C. Roberson, plaintiff.

Robert Bruni Maddox, Office of Attorney General, Austin, TX, for Mark Brassell, Officer, defendant.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

### I. *Introduction*

Pending before the court is Plaintiff Reginald C. Roberson's ("Roberson") Motion for Attorneys' Fees and Costs (# 81). Roberson seeks recovery of attorneys' fees and costs as the prevailing party in his action against Defendant Mark Brassell ("Brassell").

Having reviewed the pending motion, the submissions of the parties, the pleadings, the joint pretrial order, and the applicable law,

the court is of the opinion that Roberson's motion for attorneys' fees and costs should be granted in part and denied in part.

## II. *Background*

On February 6, 1996, Roberson instituted this civil rights action as a *pro se* plaintiff against Brassell, a prison correctional officer, asserting an Eighth Amendment claim for the use of excessive force under 42 U.S.C. § 1983. On February 26, 1998, the court appointed Jeffrey J. Putnam ("Putnam") to represent Roberson. Putnam secured the assistance of Douglas C. Elliott ("Elliott"), a fellow associate at the law firm of Royston, Rayzor, Vickery & Williams, L.L.P., as well as that of a paralegal, to litigate the case. Roberson's claims were tried to a jury for three days, ending August 12, 1998. At trial, Roberson asserted that, while confined in the Ferguson Unit of the Texas Department of Criminal Justice, he was injured on December 31, 1995, as the result of the use of excessive force by Brassell. The jury returned a verdict in favor of Roberson, awarding him $30,000.00 in actual damages and $35,000.00 in punitive damages.

In his motion for attorneys' fees and costs, Roberson seeks an award of $33,818.00 in attorneys' fees for 237.6 hours of time expended on this litigation, calculated as follows:

Putnam: 186.3 hours at $150.00 per hour=$27,945.00

Elliott: 43 hours at $125.00 per hour=$5,375.00

Paralegal: 8.3 hours at $60.00 per hour = $498.00

Roberson also seeks costs totaling $1,155.07.

Brassell contends that the amount of fees sought and the hours billed are not justified. In addition, Brassell maintains that the Prison Litigation Reform Act ("PLRA") applies to this case, thereby placing substantial limits on Roberson's recovery. Roberson disagrees, asserting that because the PLRA ("the Act") was enacted on April 26, 1996, it has no application to the case, which was filed before the passage of the Act.

## III. *Analysis*

### A. *Application of the PLRA*

■ Roberson's motion for attorneys' fees and costs raises an unsettled issue of whether the PLRA applies to attorneys' fees in a case that was pending when the PLRA was enacted, yet the attorney was not appointed and did not begin or complete his work until after the PLRA's effective date. The federal courts of appeal are split as to the PLRA's applicability to attorneys' fees in this situation, and the Fifth Circuit has never addressed the issue.

Section 803 of the PLRA amends 42 U.S.C. § 1997e, which applies to suits brought by prisoners challenging their conditions of confinement. Subsection (d) provides for attorneys' fees in such cases, stating:

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that—

(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and

(B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

(2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

(3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than

150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel.

42 U.S.C.A. § 1997e.

"The question of whether to apply the PLRA to a case pending on its enactment is governed by the Supreme Court's ... opinion in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)." *Strickland v. Rankin County Correctional Facility*, 105 F.3d 972, 973 (5th Cir.1997). "*Landgraf* prescribes a two-stage analysis to answer this question." *Id.* In *Landgraf*, the Supreme Court explained:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *see Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2062, 138 L.Ed.2d 481 (1997); *United States v. Rocha*, 109 F.3d 225, 228 (5th Cir.1997); *Strickland*, 105 F.3d at 973.

Although the Fifth Circuit has not addressed the PLRA's attorneys' fee provisions, it has ruled on the PLRA's "*in forma pauperis*" and "three strikes" provisions. *See Strickland*, 105 F.3d at 974 (holding that "prisoners whose appeals were pending on the effective date of the PLRA must refile to this court in conformity with the amended statute before we consider their appeals on the merits"); *see also Adepegba v. Hammons*, 103 F.3d 383, 386 (5th Cir.1996) (holding that the PLRA's "three strikes" provision

applies to appeals that were pending on its effective date). In determining the PLRA's applicability, the Fifth Circuit has applied the approach endorsed in *Landgraf*. *See id.*

■ Utilizing the *Landgraf* analysis, the Fifth Circuit, along with other circuits, has noted that the PLRA contains no effective date provision. *See Strickland*, 105 F.3d at 973–74 (citing *Adepegba*, 103 F.3d at 385–86; *Green v. Nottingham*, 90 F.3d 415, 419 (10th Cir.1996)); *see also Cooper v. Casey*, 97 F.3d 914, 921 (7th Cir.1996); *Jensen v. Clarke*, 94 F.3d 1191, 1203 (8th Cir.1996); *but see Alexander S. v. Boyd*, 113 F.3d 1373, 1385–86 (4th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 880, 139 L.Ed.2d 869 (1998). Upon finding no effective date provision, the Fifth Circuit has ascertained that Congress did not expressly prescribe the PLRA's proper reach.

Turning to step two, the issue is whether application of the PLRA attorneys' fees provision would "impair rights, increase liability for past conduct, or attach new duties to completed transactions." *See Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483; *see also Strickland*, 105 F.3d at 974. If the attorneys' fees relate to work started or completed before the PLRA's enactment, most courts answer step two in the affirmative and do not apply the PLRA. *See Blissett v. Casey*, 147 F.3d 218, 220–21 (2d Cir.1998), *petition for cert. filed*, 67 U.S.L.W. 3259 (U.S. Sept. 23, 1998) (No. 98–527) (finding the PLRA did not apply to work completed before enactment); *Hadix v. Johnson*, 144 F.3d 925, 947 (6th Cir.), *cert. granted*, —— U.S. ——, 119 S.Ct. 508, —— L.Ed.2d —— (1998) (holding that the "award of attorney fees for legal work performed prior to the enactment of the PLRA is governed by 42 U.S.C. § 1988, and not § 803(d) of the PLRA"); *Glover v. Johnson*, 138 F.3d 229, 250 (6th Cir.1998) ("allowing the PLRA's limitations on attorney fees to alter the standards and rate for awarding fees for legal work completed prior to passage of the PLRA results in an impermissible retroactive effect by attaching significant new legal burdens to the completed work, and by impairing rights acquired under preexisting law"); *Cooper*, 97 F.3d at 921 (holding that application of the PLRA to pre-

enactment work "would attach (without clear indication of congressional intent to do so) new legal consequences to completed conduct, namely the Services rendered by the plaintiffs' counsel in advance of the passage of the new Act"); *Jensen,* 94 F.3d at 1201–03 (concluding that application of the attorney's fees provisions in § 803(d) to Plaintiffs and their attorneys who had worked for "literally years" on the assumption that their fees would be based on 42 U.S.C.A. § 1988 would be "manifestly unjust"); *but see Alexander S.,* 113 F.3d at 1388 (holding that the PLRA applies to post-enactment fee awards, regardless of whether the work was performed before the statute was enacted). If, however, the attorneys' fees relate to post-enactment work, most courts apply the PLRA, finding that this will not "impair rights, increase liability for past conduct, or attach new duties" to those completed transactions. *See Inmates of D.C. Jail v. Jackson,* 158 F.3d 1357, 1358 (D.C.Cir.1998) (finding that "the attorney's fees limitations in the PLRA apply to all work performed after the effective date of the Act"); *Williams v. Brimeyer,* 122 F.3d 1093, 1094 (8th Cir.1997) (holding that the PLRA "applies to all hours worked in this case after the date of the passage of the Act"); *but see Hadix,* 143 F.3d at 255–56 (PLRA does not apply if the plaintiff's attorneys filed their appearance (or began the representation) before the enactment).

■ In the case at bar, the application of the PLRA would not have an improper retroactive effect. Roberson filed this action *pro se* on February 2, 1996. He had no attorney until February 26, 1998—one year and ten months after the PLRA was enacted on April 26, 1996—when Putnam was appointed to represent him in connection with a trial that had originally been set for May 1998. When Roberson filed suit and continued to prosecute it for over two years, he had no right or expectation of recovering attorney's fees because he had no attorney. The potential for an attorney's fee award did not exist until well after the PLRA went into effect, and it cannot be credibly argued that Roberson relied on the pre-PLRA application of § 1988 when pursuing his claims. At the time of his appointment, Putnam was on notice of the PLRA and its potential effect on any attor-

neys' fees that might be awarded. He perhaps expected to receive fees if Roberson prevailed, but such an award has always been discretionary with the court, not a matter of right. *See* 42 U.S.C. § 1988(b). Hence, applying the PLRA's fee provisions in this situation will not "impair rights, increase liability for past conduct, or attach new duties to completed transactions." *See Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483; *see also Strickland,* 105 F.3d at 974. Furthermore, limiting Roberson's attorneys' fees to 150 percent of the amount statutorily allowed for court-appointed counsel in federal criminal cases is not so fundamentally unfair as to result in manifest injustice. Therefore, application of the PLRA's attorneys' fees provisions in the instant case will not have an impermissible retroactive effect.

### B. *Calculation of Attorneys' Fees*

■ In cases brought under the federal civil rights statutes, 42 U.S.C. § 1988(b) provides:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs....

Although discretionary, the Fifth Circuit has declared that an award of attorneys' fees to a prevailing party in a civil rights case " 'should be in such an amount to insure that attorneys will undertake representation in this type of case.' " *Fisher v. Procter & Gamble Mfg. Co.,* 613 F.2d 527, 547 (5th Cir.1980), *cert. denied,* 449 U.S. 1115, 101 S.Ct. 929, 66 L.Ed.2d 845 (1981) (quoting *Baxter v. Savannah Sugar Ref. Corp.,* 495 F.2d 437, 447 (5th Cir.), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974)); *see also Abrams v. Baylor College of Medicine,* 805 F.2d 528, 536 (5th Cir.1986). It is well settled, however, that attorneys' fees are awarded only for those hours that are reasonably necessary to prosecute the case. *See EEOC v. Clear Lake Dodge,* 60 F.3d 1146, 1154 (5th Cir.1995) (citing *City of Riverside v. Rivera,* 477 U.S. 561, 568, 106 S.Ct. 2686, 91 L.Ed.2d 466

(1986); *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Thus, the fee applicant bears the burden of proving that the number of hours spent litigating the lawsuit is reasonable. *See Cooper v. Pentecost*, 77 F.3d 829, 832 (5th Cir.1996) (citing *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933); *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir.1990); *Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir.), *vacated in part*, 903 F.2d 352 (5th Cir.1990).

■ The Fifth Circuit has adopted the "lodestar" method for calculating the amount of attorneys' fees to be awarded a prevailing civil rights plaintiff. *See Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 208–09 (5th Cir.1998); *In Matter of Fender, Zapata Partnership, Ltd.*, 12 F.3d 480, 487 (5th Cir.), *cert. denied*, 511 U.S. 1143, 114 S.Ct. 2165, 128 L.Ed.2d 888 (1994); *Longden v. Sunderman*, 979 F.2d 1095, 1099 (5th Cir. 1992); *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1084 (5th Cir. 1985). "The lodestar is computed by multiplying the number of hours reasonably expended by the prevailing rate in the community for similar work." *Fender*, 12 F.3d at 487; *Shipes v. Trinity Indus.*, 987 F.2d 311, 319–20 (5th Cir.), *cert. denied*, 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993); *Longden*, 979 F.2d at 1099; *see also Jason D.W.*, 158 F.3d at 208; *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied*, 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 113 (1995).

■ The lodestar is presumed to be an attorney's reasonable fee. *See Alberti*, 896 F.2d at 930 (citing *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 564, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). The first step in determining the lodestar amount is ascertaining the "compensable hours spent from the attorneys' time records, including only hours reasonably spent." *Shipes*, 987 F.2d at 319–20; *see Alberti*, 896 F.2d at 930; *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 552 (5th Cir.1987); *Sims*, 778 F.2d at 1084. Plaintiff's counsel must "'exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.'" *Alberti*, 896 F.2d at 930 (quoting *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933); *see also Clear Lake Dodge*, 60 F.3d at 1154.

In the motion pending before the court, Roberson seeks compensation for Putnam's 186.3 and Elliott's 43.0 hours of attorney time devoted to this litigation.[1] In response, Brassell asserts that the involvement of two attorneys was unnecessary and contends that Elliott's time should be disregarded in its entirety. He further argues that Putnam's 186.3 hours should be substantially reduced due to inadequate specificity in billing entries, duplicative work effort, and failure to exercise billing judgment. Roberson points out, however, that Brassell was also represented by two attorneys during a portion of the trial:

> The Court will recall that Defendant's opening statement was presented by Robert Maddox's co-counsel Leslie Dipple and that the examination of several of Defendant's witnesses was conducted by co-counsel Leslie Dipple. It will likely come as a disappointment to the tax payers of the State of Texas, that the Texas Attor-

---

1. A review of the time records reveals that Putnam served as lead counsel and had most of the contact with Roberson and with opposing counsel. In addition, he briefed legal issues relating to excessive force claims, the admissibility of Roberson's prior acquittal, and the motions in limine; reviewed prior pleadings and Roberson's personal documents; obtained information concerning the related criminal case and secured a transcript of that proceeding; reviewed documents received from the Texas Department of Criminal Justice including Roberson's medical records; drafted the initial disclosures; reviewed the criminal trial testimony of potential witnesses; finalized the pretrial order and the proposed jury instructions; prepared cross-examina-

tion questions for Brassell, Johnson, and Adams; gave the opening statement at trial; questioned most of the witnesses at trial; gave the closing argument; briefed issues relating to an award of attorney's fees and costs; finalized the motion for attorney's fees and costs; researched and briefed issues concerning the motion for new trial including post-verdict juror interviews, juror misconduct, and *voir dire* improprieties; and prepared the response to the motion for new trial. Elliott researched issues of import to the litigation such as the *de minimis* injury requirement and state indemnification of Eighth Amendment violations, drafted the pretrial order, prepared direct examination questions, interviewed witnesses, and prepared trial exhibits.

ney General's office assigns co-counsel to cases when the Attorney General believes that co-counsel's Services are not justified; to cases which in no way demand the Services of additional counsel; and to cases in which the presence of co-counsel would be redundant, excessive, and unnecessary.

 In this instance, while there may have been some duplication of effort, prior to trial, Putnam and Elliott generally performed discrete tasks that substantially differed. The utilization of two trial counsel, however, was excessive to an extent, as a paralegal could have performed some of the same functions. Yet, Elliott participated in the trial by examining witnesses, providing input at *voir dire,* and conferring about trial strategy, such that his role at trial should not be discounted completely. Contrary to Brassell's assertions, Putnam's time records do not reflect excessive or wasteful preparation time, duplicative work, or overly vague entries. Unlike Brassell's counsel, Putnam and Elliott had no familiarity with prisoner litigation prior to this case and needed adequate time to research the relevant legal issues and prepare for trial. Accordingly, 5.0 hours of Elliott's trial time will be excluded from the fee calculation, resulting in 38.0 hours of Elliott's time and all 186.3 hours of Putnam's time being included in the calculation of fees.

 In addition to attorneys' fees, Roberson requests an award for 8.3 hours of paralegal time. A party is entitled to recover fees for services performed by paralegals that are traditionally performed by attorneys. *See Alter Fin. Corp. v. Citizens & Southern Int'l Bank of New Orleans,* 817 F.2d 349, 350 (5th Cir.1987); *Richardson v. Byrd,* 709 F.2d 1016, 1023 (5th Cir.), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). In this instance, the itemization of hours submitted by Roberson indicates that the paralegal billed for time spent preparing exhibits for use in the case, compiling witness notebooks, and doing a small amount of library research. Roberson's request concerning paralegal time is reasonable for such services, particularly in light of the fact that much of the work done by the paralegal could justifiably have been performed by an attorney. Thus, the 8.3 hours of paralegal time will be included in the calculation of fees.

The second step in the analysis is to ascertain an appropriate hourly rate. Because the PLRA applies in this case, the fees sought are subject to the PLRA's fee cap:

> No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel.

42 U.S.C. § 1997e(d)(3). In the Southern District of Texas, attorneys appointed under the Criminal Justice Act receive compensation at the rate of $45.00 per hour for pretrial work and $65.00 per hour during trial. Therefore, under the PLRA's cap, Putnam and Elliott are limited to a maximum hourly rate of $67.50 (150 percent of $45.00) for pretrial work and $97.50 (150 percent of $65.00) during trial. "The PLRA does not provide a scheme for differentiating between the hourly rate charged by attorneys of varying experience levels, nor [does the PLRA] address the issue of the hourly rate for work performed by paralegals." *Chatin v. State of New York,* No. 96 Civ. 420(DLC), 1998 WL 293992, at *2 (S.D.N.Y. June 4, 1998). Nevertheless, in line with the attorneys' reduced rates, an hourly rate of no more than $30.00 per hour is justified for the paralegal's services in this case.

The lodestar, therefore, will be calculated as follows: Putnam—169.8 hours pretrial multiplied by $67.50 per hour for $11,461.50, and 16.5 hours in trial multiplied by $97.50 per hour for $1,608.75; Elliott—26.5 hours pretrial multiplied by $67.50 per hour for $1,788.75, and 11.5 hours in trial multiplied by $97.50 per hour for $1121.25; and paralegal—8.3 hours multiplied by $30.00 per hour for $249.00, fixing the lodestar amount at $16,209.25.

 After determining the lodestar amount, the court may adjust it upward or downward based upon the respective weights of the factors set forth in *Johnson v. Georgia Highway Express, Inc. See* 488 F.2d 714, 717–19 (5th Cir.1974); *accord Jason D.W.,*

158 F.3d at 209; *Fender,* 12 F.3d at 487; *Shipes,* 987 F.2d at 320; *Curtis,* 822 F.2d at 552; *Sims,* 778 F.2d at 1084. Enhancement of the lodestar amount, however, "is appropriate only in certain 'exceptional' cases—those in which there is a substantial risk of not prevailing, or in which the issues are so novel or complex that the lodestar amount awarded would not provide a reasonable fee that would adequately reflect the quality of the representation." *Von Clark,* 916 F.2d at 260 (citing *Delaware Valley Citizens' Council,* 478 U.S. at 566–67, 106 S.Ct. 3088); *see also Shipes,* 987 F.2d at 320; *Alberti,* 896 F.2d at 930. It is also within the court's discretion to reduce the amount of an award of attorneys' fees. *See United States Leather, Inc. v. H & W Partnership,* 60 F.3d 222, 229 (5th Cir.1995).

▄▄▄▄ The twelve *Johnson* factors are:

(1) the time and labor required for the litigation;

(2) the novelty and difficulty of the questions presented;

(3) the skill required to perform the legal services properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the result obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Jason D.W.,* 158 F.3d at 209 (citing *Johnson,* 488 F.2d at 717–19); *see Kellstrom,* 50 F.3d at 329 n. 19; *Fender,* 12 F.3d at 487 n. 10; *Shipes,* 987 F.2d at 320 n. 6; *Longden,* 979 F.2d at 1100 n. 10. Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted. *See Jason D.W.,* 158 F.3d at 209 (citing *Hensley,* 461 U.S. at 434 n. 9, 103 S.Ct. 1933; *Shipes,* 987 F.2d at 320). The Supreme Court has observed, " '[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. 1933); *see Jason D.W.,* 158 F.3d at 209. The court, therefore, should consider the amount of damages awarded to the plaintiff as compared to the amount of damages sought. *See Farrar,* 506 U.S. at 114, 113 S.Ct. 566 (citing *City of Riverside,* 477 U.S. at 585, 106 S.Ct. 2686). There is no windfall of attorney's fees when the district court properly considers the relationship between the extent of the success and the amount of the fee that is awarded. *See Clear Lake Dodge,* 60 F.3d at 1154. "This factor is particularly crucial when . . . a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims." *Jason D.W.,* 158 F.3d at 209 (citing *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933). "Absent a reliable record of time expended on the prevailing claim, it is within the discretion of the district court to determine a reasonable number of hours that should have been expended in pursuing the claim on which the party prevailed." *Von Clark,* 916 F.2d at 259.

▄▄▄▄ In this case, the quality of the representation was superb and the results obtained were excellent. Unlike most prisoners challenging their conditions of confinement, Roberson was granted substantial relief. While he initially sought only $30,000.00 in damages, the jury awarded him a total of $65,000.00. In addition, there was no long-standing attorney-client relationship between Putnam and Roberson. Indeed, Putnam did not choose to represent Roberson, but instead was appointed by the court to represent him *pro bono.* Moreover, Roberson could not be deemed an attractive client, and the case was not particularly desirable. In addition to being a twice convicted felon and grooming himself like a woman, Roberson, who suffers from AIDS, indisputably bit Brassell on the hand during the course of their struggle,

requiring Brassell to submit to monthly AIDS test for a one-year period.

As to the attorneys' experience and qualifications, Putnam, a graduate of South Texas College of Law, has been licensed to practice law in Texas since 1993. Elliott, a graduate of Northeastern University School of Law, was licensed to practice law in Texas in 1995, having been previously licensed in Maryland in 1993. Both are associated with a well-respected, Houston firm that specializes in admiralty matters, and each has a good reputation in the local legal community. Although the issues involved in this case were neither novel nor complex, neither Putnam nor Elliott had ever tried a prisoner civil rights case. Rather, Putnam devotes the majority of his law practice to handling serious personal injury cases, commercial maritime disputes, and ERISA litigation, as does Elliott. Under these circumstances, their ability to prosecute Roberson's case successfully is laudable. Thus, a reduction in the lodestar amount is not appropriate in this situation. Accordingly, attorneys' fees in the amount of $16,209.25 are properly awardable to Roberson.

The PLRA, however, requires that:

a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

42 U.S.C. § 1997e(d)(2). In this case, twenty-five percent of the jury award is $16,250.00, which must be applied to satisfy the attorneys' fees award of $16,209.25. The fee award will be assessed against the compensatory damages component of the judgment.

### C. Award of Costs

Rule 54(d) of the Federal Rules of Civil Procedure provides that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." FED.R.CIV.P. 54(d); see also Delta Air Lines, Inc. v. August, 450 U.S. 346, 352, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981); Tol-

son v. Avondale Indus., Inc., 141 F.3d 604, 611 (5th Cir.1998); Coats v. Penrod Drilling Corp., 5 F.3d 877, 891 (5th Cir.1993), cert. denied, 510 U.S. 1195, 114 S.Ct. 1303, 127 L.Ed.2d 654 (1994). There is "a strong presumption that the court will award costs to the prevailing party." Salley v. E.I. DuPont de Nemours & Co., 966 F.2d 1011, 1017 (5th Cir.1992); see Sheets v. Yamaha Motors Corp. U.S.A., 891 F.2d 533, 539 (5th Cir. 1990).

A district court generally has wide discretion in awarding costs. See Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 233-34, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964); Hall v. State Farm Fire & Cas. Co., 937 F.2d 210, 216 (5th Cir.1991); Commercial Credit Equip. Corp. v. Stamps, 920 F.2d 1361, 1367 (7th Cir.1990); Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., 854 F.2d 799, 801 (5th Cir.1988); Schwarz v. Folloder, 767 F.2d 125, 127 (5th Cir.1985); Copperweld Steel Co. v. Demag–Mannesmann–Bohler, 624 F.2d 7, 9 (3d Cir.1980). This discretion, however, is not unfettered. See Hall, 937 F.2d at 216-17; Commercial Credit Equip. Corp., 920 F.2d at 1367; United States v. Kolesar, 313 F.2d 835, 838 (5th Cir.1963). A court may not award costs to the prevailing party unless it first determines "that the expenses are allowable cost items and that the costs are reasonable, both in amount and necessity to the litigation." Commercial Credit Equip. Corp., 920 F.2d at 1367; see Schwarz, 767 F.2d at 127.

Roberson seeks an award of costs in the amount of $1,155.07. A review of the supporting documentation reveals that the claimed costs are allowable cost items, are reasonable in amount, and were necessarily incurred for the successful prosecution of the litigation. Therefore, Roberson is entitled to recover costs of $1,155.07.

### V. Conclusion

Roberson's motion for attorneys' fees and costs is GRANTED IN PART and DENIED IN PART.

Roberson is awarded reasonable attorneys's fees of $16,209.25.

Costs in the amount of $1,155.07 are taxed against Brassell.

IT IS SO ORDERED.

## FINAL JUDGMENT

In accordance with the jury's verdict returned on August 12, 1998, the court enters final judgment in favor of Plaintiff Reginald C. Roberson.

It is ORDERED that Reginald C. Roberson recover of Mark Brassell:

Actual damages of $13,790.75;

Punitive damages of $35,000.00;

Attorneys' fees of $16,209.25;

Costs of $1,155.07; and

Postjudgment interest on the total of $66,155.07 at the rate of 4.616 percent per annum, compounded annually, until paid.

This is a FINAL JUDGMENT.