**Kenneth JACKSON, Plaintiff,**

v.

**Heath AUSTIN, et al., Defendants.**

**No. CIV.A. 99–3363–KHV.**

United States District Court,
D. Kansas.

June 12, 2003.

---

4. As set forth in the Pretrial Order.

Anne W. Schiavone, Eric E. Packel, Husch & Eppenberger, Springfield, MO, Jeffrey R. Scurlock, McLeod, Nash & Franciskato, Kansas City, MO, for Plaintiff.

Julie L. St. Peter, El Dorado Correctional Facility, El Dorado, KS, Loren F. Snell, Jr., Scott B. Poor, Office of Attorney General, Topeka, KS, Rebecca Ann Weeks, Kansas Attorney General, Topeka, KS, for Defendants.

## NUNC PRO TUNC MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiff brought suit against defendants under 42 U.S.C. § 1983, alleging that they violated his constitutional rights by denying him adequate medical care and through use of excessive force. On January 17, 2003, the Court awarded plaintiff actual damages of $15,000 and punitive damages of $30,000. This matter comes before the Court on *Plaintiff's Application For Attorneys' Fees* (Doc. # 157) filed February 27, 2003. Plaintiff seeks fees of $69,425.50 and expenses of $9,934.26. For reasons stated below, the Court sustains plaintiff's motion in part and awards $40,654.75 in fees and $1,509.15 in expenses.

A prevailing plaintiff under Section 1983 is entitled to attorneys' fees under 42 U.S.C. § 1988. For purposes of attorneys' fees, plaintiff may be considered the "prevailing party," if he succeeds on any significant issue in litigation which achieves some of the benefit he sought in bringing suit. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see Alexander S. v. Boyd,* 113 F.3d 1373, 1388 (4th Cir.1997), *cert. denied,* 522 U.S. 1090, 118 S.Ct. 880, 139 L.Ed.2d 869 (1998). Determining the amount of such an award is committed to the district court's discretion. *Carter v. Sedgwick County,* 36 F.3d 952, 956 (10th Cir.1994). The presumptively reasonable attorney's fee is the product of reasonable hours times a reasonable rate. *Id.* (quotations and citations omitted). This calculation yields a "lodestar" figure which is subject to adjustment. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In addition, because plaintiff's fee request is governed by the attorneys' fee provisions of the Prison Litigation Reform Act ("PLRA"), plaintiff must show that the fees were directly and reasonably incurred in proving a violation of his rights and that the fees were proportional to his relief.[1] *See* 42 U.S.C. § 1997e(d)(1); *Clark v. Phillips,* 965 F.Supp. 331 (N.D.N.Y.1997). Plaintiff bears the burden of establishing entitle-

---

1. 42 U.S.C. § 1997e(d) provides:

 (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that—

 (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and

 (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or

 (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.

 (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to

ment to an award and documenting the appropriate hours expended and hourly rates. *See Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249–50 (10th Cir. 1998).

The Court first considers defendants' request to stay any award of attorneys' fees and expenses until defendants have completed their appeal. Defendants argue that depending upon the outcome of their appeal, plaintiff might not be a prevailing party and would not be entitled to any award. The Court denies defendants' request. By so doing, the Court allows defendants to challenge the fee award as part of their pending appeal. If defendants' appeal alters plaintiff's status as a prevailing party, the fee award can be amended.

## I. Reasonable Hourly Rate

In setting the hourly rate, "the court should establish, from the information provided to it and from its own analysis of the level of performance and skills of each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits calculated as of the time the court awards fees." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir.1983). A reasonable hourly rate comports with rates "prevailing in the community for similar services for lawyers of reasonably competent skill, experience, and reputation." *Blum*, 465 U.S. at 896 n.

11, 104 S.Ct. 1541. A district judge may turn to her own knowledge of prevailing market rates as well as other indicia of a reasonable market rate. *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir.1994) (citation omitted). To determine a reasonable rate, the Court focuses on the rates of "lawyers of comparable skill and experience." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1204 (10th Cir.1998).

Under the PLRA, "[n]o award of attorney's fees ... shall be based on an hourly rate greater than 150 percent of the hourly rate established under [18 U.S.C. § 3006A] for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). Under 18 U.S.C. § 3006A, the Court can only award "$60 per hour for time expended in court ... and $40 per hour for time reasonably expended out of court, unless the Judicial Conference determines that a higher rate ... is justified for a circuit or for particular districts." For work from April 1, 2001 through April 30, 2002, the Judicial Conference of the Court of Appeals for the Tenth Circuit limits attorneys' fees to $75 per hour for time spent in court and $55 per hour for time spent out of court. For work on or after May 1, 2002, the maximum hourly rate is $90 per hour for both in court and out-of-court time. Defendants argue that plaintiff should be limited to these rates.[2] Plaintiff seeks $125 per hour for Jeff Scurlock and Anne Schiavone

exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

(3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel.

(4) Nothing in this subsection shall prohibit a prisoner from entering into an agreement

to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than by the defendant pursuant to section 1988 of this title.

**2.** Defendants actually request that the Court apply the rates of $65 per hour for in-court time and $45 per hour for out-of-court time. The Judicial Conference amended those rates effective January 1, 2000. The Court construes defendants' objection as a request to apply the standard rates adopted by the Tenth

and $185 per hour for Eric Packel. The Court construes plaintiff's request as 150 per cent of the maximum under Section 1997e(d)(3), *i.e.* $82.50 for out-of-court time for Scurlock before May 1, 2002, $125 for Scurlock on and after May 1, 2002, $125 for Schiavone and $135 for Packel.[3]

■ Defendants argue that plaintiff's counsel is not shown to be sufficiently experienced to justify the 150 per cent enhancement. The PLRA does not provide a scheme, however, for differentiating between the hourly rate charged by attorneys of varying experience levels. *Roberson v. Brassell,* 29 F.Supp.2d 346, 351 (S.D.Tex.1998); *Chatin v. State of New York,* No. 96 Civ. 420(DLC), 1998 WL 293992, at *2 (S.D.N.Y. June 4, 1998). Other courts have mechanically granted the 150 per cent maximum with little or no consideration of experience. *See Hernandez v. Kalinowski,* 146 F.3d 196 (3d Cir. 1998); *Alexander S.,* 113 F.3d at 1388; *Roberson,* 29 F.Supp.2d at 351; *Rodriguez v. Zavaras,* 22 F.Supp.2d 1196, 1202 (D.Colo.1998); *Chatin,* 1998 WL 293992 at *2. In the Court's view, the experience of counsel is important in determining the appropriate award, but for work before May 1, 2002, the maximum allowable rate under Section 1997e(d)(3) is so low—relative to market rates—that counsel could hardly be so inexperienced as to not deserve the maximum rate.[4] Indeed the enhanced hourly PLRA rate for out-of-court time before May 1, 2002—$82.50—is only slightly higher than the prevailing market rate for legal assistants in the Kansas City area. *See Boilermaker–Blacksmith,* 2002 WL 372868, at *2 ($75); *Lappin v. Gwartney,* 2000 WL 1532765, at *11 (D.Kan. Sept.18, 2000) ($80 for 2000; $70 for 1999); *Aquilino,* 109 F.Supp.2d at 1325 ($65); *Outdoor Sys.,* 2000 WL 575023 at *4–5 ($70). Although plaintiff did not provide information as to Scurlock's experience, he was admitted to the bar in Missouri in 1997 and to the District of Kansas in 1998. Scurlock prepared the case for trial until he withdrew in May of 2002. Scurlock successfully opposed defendants' motion for reconsideration of the Court's summary judgment ruling and defendants' second summary judgment motion. The Court therefore applies an $82.50 hourly rate for Scurlock's work before May 1, 2002.

As to Scurlock's work on and after May 1, 2002 and as to Packel and Schiavone, plaintiff provides sufficient evidence of counsel's experience to justify an enhancement of the standard hourly rates which the Tenth Circuit Judicial Conference has

---

Circuit Judicial Conference for the relevant time period.

3. Scurlock did not bill for any in-court time. Schiavone and Packel did not bill for any work before May 1, 2002.

4. This Court has found that the prevailing market rate for lead counsel in a variety of cases ranges from $120 per hour to $225 per hour, depending on counsel's experience in the field. *Robbins v. Chronister,* No. 97–3489–DJW, 2002 WL 356331, at *13 (D.Kan. Mar.1, 2002) (prevailing market rate for lead counsel in civil rights litigation between $120 and $225 per hour); *see also Erickson v. City of Topeka, Kan.,* 239 F.Supp.2d 1202, 1211 (D.Kan.2002) ($175 per hour); *Sheldon v.* *Vermonty,* 237 F.Supp.2d 1270, 1279 (D.Kan. 2002) ($155 per hour); *Boilermaker–Blacksmith Nat'l Pension Fund v. ACE Polyethylene Bag Co.,* 2002 WL 372868, *2 (D.Kan. Mar.7, 2002) ($150 per hour); *Wilder–Davis v. Board of County Comm'rs of Johnson County, Kan.,* Civ. A. No. 98–2363–GTV, 2000 WL 1466691, *5 (D.Kan. Aug.8, 2000) ($165 per hour); *Aquilino v. Univ. of Kan.,* 109 F.Supp.2d 1319, 1325 (D.Kan.2000) ($155 per hour); *Lintz v. Am. Gen. Fin., Inc.,* 87 F.Supp.2d 1161, 1171 (D.Kan.2000) ($155 per hour); *Outdoor Sys., Inc. v. City of Merriam, Kan.,* 2000 WL 575023 at *4–5 (D.Kan. Feb.25, 2000) ($165 and $155 per hour); *Starlight Int'l, Inc. v. Herlihy,* 190 F.R.D. 587, 592 (D.Kan.1999) ($155 per hour for lead counsel, $120 per hour for other attorneys).

adopted. Given the limited information provided by counsel, however, the Court awards an hourly rate of $120 for Scurlock, Packel and Schiavone for work on and after May 1, 2002. The Court has outlined Scurlock's qualifications. Packel is a member of Husch & Eppenberger law firm and has worked in private practice for ten years. Schiavone graduated from law school in 1999 and has worked as a litigation associate in private practice for four years. All three attorneys performed admirably and Packel and Schiavone obtained excellent results at trial. Given the Court's knowledge of market rates in the community and the fact that this case did not involve complex legal and factual issues, $120 is a reasonable hourly rate.[5]

 Defendants object to the hourly rates charged for legal assistants, investigators and law clerks. Plaintiff requests hourly rates of $95.00 for legal assistant N. Cline, $85.00 for legal assistants H. Long and L. McWhorter, and $85.00 for investigator J. Schwarz. Plaintiff requests hourly rates of $95 for Heather McNeely and $90 for G. Nicole Hininger and David C. DeGraeff, but does not identify their positions. Based on the description of work and their proposed rates, the Court assumes that these individuals are legal assistants or law clerks. Plaintiff does not provide evidence of the prevailing market rates, however, and the requested rates do not reflect a reduction in light of the restrictions in Section 1997e(d)(3). Based on

the market rate and the reduction contemplated by Section 1997e(d)(3), the Court awards $40 per hour for legal assistants, investigators, law clerks and individuals otherwise unidentified in the record. *See Searles v. Van Bebber,* 64 F.Supp.2d 1033, 1037 (D.Kan.1999) ($30 per hour for legal assistant and $45 per hour for law clerk); *Roberson,* 29 F.Supp.2d at 353 (in light of attorneys' reduced rates under PLRA, awarding $30 per hour for legal assistant).

## II. Number of Hours

 Attorneys normally do not bill all hours expended in litigation to a client, and "an applicant should exercise 'billing judgment' with respect to a claim of the number of hours worked." *Ellis,* 163 F.3d at 1202 (quoting *Malloy v. Monahan,* 73 F.3d 1012, 1018 (10th Cir.1996) (further quotations and citations omitted)). To show billing judgment, " '[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary' ... [and the] district court has a corresponding obligation to exclude hours not 'reasonably expended' from the calculation." *Id.*

Defendants first argue that because the Court dismissed plaintiff's claim relating to tight handcuffs, the Court should deny fees associated with that claim. Defendants fail to note that at trial, plaintiff prevailed on a claim which relied in part on defendants' use of handcuffs.[6] The

---

**5.** This rate is consistent with the low end of hourly rates recently approved in the District of Kansas. *See supra* note 5.

**6.** The Court dismissed plaintiff's claim that Leonard Moore refused to immediately loosen the handcuffs, *see Jackson v. Simmons,* 2001 WL 1456859, at *6 (D.Kan.2001), but the Court considered the tightness of the handcuffs as part of the totality of the officers' response to plaintiff's alleged conduct. *See Jackson v. Austin,* 241 F.Supp.2d 1313, 1317

(D.Kan.2003) (finding handcuffs were excessively tight, officers had pulled up on handcuffs, and handcuffs were cutting into plaintiff's skin); *see also Jackson v. Simmons,* 2001 WL 1456859, at *4 (D.Kan. Nov.2, 2001) (injury to plaintiff's wrists may be insufficient by itself to constitute Eighth Amendment violation, but reasonable fact finder could conclude that plaintiff's injuries taken together were more than de minimis).

Court cannot precisely determine how much time counsel spent on the dismissed claim against Leonard Moore, but that claim was closely intertwined with plaintiff's other claims. Also, it required very little additional briefing and the Court dismissed it shortly after the Court appointed counsel for plaintiff. Accordingly, the Court finds that only a slight reduction of two hours is justified.

■ Defendant next objects that entry 10780 and entry 11012 are identical and reflect duplicative work. Entry 10780 reflects 1.8 hours for counsel's initial review of the court file for copying. Entry 11012 reflects 3.2 hours for counsel's review of the court file copies. Because the file was fairly large when the Court appointed counsel for plaintiff, these entries are reasonable and do not reflect duplicative work.

■ Defendants object that an investigator spent 31.5 hours to interview Herbert Proffitt, an inmate in El Dorado, Kansas, and prepare a one-page affidavit for Proffitt. Plaintiff filed the Proffitt affidavit in response to the Court's order to show cause why his claims against Boyer should not be dismissed. The investigator charged for three trips to El Dorado—the first two trips to interview Proffitt and the third trip to have Proffitt execute the affidavit. On July 17, 2000, before the Court appointed counsel, plaintiff submitted a detailed, two-page affidavit by Proffitt which included his recollection of the brief altercation between plaintiff and defendants. The one-page affidavit which the investigator obtained in November of 2001 supplemented Proffitt's previous affidavit as to Boyer's specific involvement in plaintiff's takedown. Given the distance between Kansas City and El Dorado (approximate-

ly 170 miles), the investigator should have coordinated his efforts with plaintiff's counsel so that the investigator only had to travel twice to El Dorado. The Court finds that the investigator reasonably incurred 12.0 hours to travel and 5.0 hours to interview Proffitt, discuss the interview with counsel and obtain a short affidavit from Proffitt.[7]

■ Defendants object to entry 16718, which reflects that counsel spent 1.2 hours preparing expense reimbursement explanation forms. Plaintiff provides no explanation for this entry and the Court therefore excludes 1.2 hours from the attorney time requested by plaintiff.

Defendants next object that because only one entry for 1.3 hours reflects that counsel did not charge for the work, counsel did not ensure that the requested fees are reasonable. The Court disagrees. Although plaintiff's application for fees does not clearly reflect that counsel has attempted to eliminate all duplicative billings and to exclude time that is not compensable, the record does not suggest broad-scale excessive billing by counsel. To the extent that particular entries are excessive, the Court has addressed them elsewhere in this order. In short, the Court is satisfied that except as noted in this order, plaintiff's application for attorneys' fees does not reflect duplicative, unnecessary, excessive or noncompensable time.

Defendant challenges time which counsel spent to prepare an application for a writ of habeas corpus ad testificandum for inmate Elmore Marks, who did not testify at trial. Plaintiff does not explain the background for the application, and the Court cannot determine whether his appearance was necessary. Because plaintiff

---

7. Because counsel only requested expenses for two of the three trips, the Court does not reduce the investigator's travel expenses.

bears the burden of showing that the time requested is compensable, *Ellis,* 163 F.3d at 1203, the Court strikes a total of 4.1 hours.[8]

▇▇▇ Defendants object to 4.2 hours related to Scurlock's withdrawal as counsel and file review with new counsel. The Court finds that such time was reasonable and helped new counsel to prepare more efficiently for trial, which was scheduled less than two months after Scurlock withdrew.

Defendants also object to 8.0 hours related to Packel's introduction to the case, claiming that such efforts were only necessary because plaintiff switched attorneys shortly before trial. The Court disagrees. Plaintiff did not voluntarily switch attorneys. He was required to do so because in May of 2002, Scurlock accepted a position with The Honorable Thomas Newton of the Missouri Court of Appeals and left private practice. Moreover, Packel spent a limited amount of time familiarizing himself with the case and Scurlock likely would have required general review time if he had taken the case to trial.

Defendants challenge several entries which do not reflect whether certain individuals were legal assistants, secretaries, law clerks or partners. Defendants also maintain that their work appears to be duplicative. The Court has reviewed every challenged entry and the evidence shows that in most cases, when one person was involved, the person merely worked on particular tasks at different times. Similarly, when two or more people were involved, one person prepared work for review by others, or two persons worked on different parts of related tasks. As to the lack of individual identification, the Court has used the $40 hourly rate for all individuals who are not sufficiently identified.

▇▇▇ Defendants challenge all work by Schiavone because the Court only appointed Packel after Scurlock withdrew. This objection is frivolous. The Court originally appointed Scurlock, who represented plaintiff until May of 2002—when Schiavone and Packel entered their appearances as replacement counsel. The Court did not specifically appoint replacement counsel because Scurlock volunteered to find replacement counsel who could try the case on short notice. Trial was scheduled for less than two months after Schiavone and Packel entered their appearances, and the decision to employ two attorneys to take the case to trial was not unreasonable.[9]

▇▇▇ Defendants assert that Schiavone duplicated Packel's work and plaintiff does not specifically indicate that the time sheets were reviewed to exclude duplication of effort. Plaintiff bears the burden of making a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. The Court recognizes that zealous representation resulted in some limited duplication of effort on plaintiff's behalf. For example, only one attorney needed to travel to El Dorado, tour the correctional facility and interview Profitt as a potential trial witness. Because both Packel and Schiavone billed 10.8 hours for these tasks, the Court excludes 10.8 hours of attorney time.[10] In addition, only one attorney had to travel to Lansing shortly before trial to

---

8. The Court strikes .5 hours from entry 4970003, 1.0 hours from entry 18619, 1.5 hours from entry 18906 and 1.1 hours from entry 18750.

9. The Court does exclude the time spent by Paul Seyferth, who consulted with Packel 1.0 hours the day before trial and spent 1.5 hours listening to Packel's opening statement and discussing strategy during trial. Plaintiff has not shown that a third attorney was necessary at trial.

10. The Court likewise excludes the travel expenses of one of the attorneys ($190.27).

interview plaintiff and Elmore Marks. Because both Packel and Schiavone billed 6.0 hours for these tasks, the Court excludes 6.0 hours of attorney time. Finally, the Court recognizes some limited duplication of effort in trial preparation. The Court therefore excludes a total of ten additional hours. As to the other challenged entries, the tasks are separable and the entries suggest that Packel and Schiavone were working on different parts of the same task.[11] Accordingly, the Court declines to further reduce the hours of Packel or Schiavone.

### III. Lodestar Calculation

Based on the above discussion, the Court calculates the lodestar as follows:

| | Hours | Rate | Total |
|---|---|---|---|
| McLeod Law Firm (attorney before 5–1–02) | 205.9 | $ 82.50 | $16,986.75 |
| McLeod Law Firm (attorney on/after 5–1–02) | 21.1 | $120.00 | $ 2,532.00 |
| McLeod Law Firm: Legal Asst., Law Clerk, Investigator | 46 | $ 40.00 | $ 1,840.00 |
| Packel | 77.8 | $120.00 | $ 9,336.00 |
| Schiavone | 75.2 | $120.00 | $ 9,024.00 |
| Husch & Eppenberger: Legal Asst., Law Clerk, | 23.4 | $ 40.00 | $ 936.00 |
| **TOTAL:** | | | **$40,654.75** |

Once a court has determined the lodestar amount, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward." *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. Neither party seeks a change in the lodestar, and the Court sees no reason to alter the fee award. In addition, given the limits set forth in Section 1997e(d)(3), the Court likely could not grant plaintiff an increase.

### IV. Expenses

In addition to attorneys' fees, the prevailing party is entitled to recover reasonable expenses that are usually itemized and billed separately, as long as the expenses are reasonable. *See Sussman v. Patterson,* 108 F.3d 1206, 1213 (10th Cir. 1997). As an initial matter, plaintiff seeks $3,146.26 for copies, $2,269.25 for deposition costs, $266.15 in witness fees and $90.00 in service fees. These expenses are considered "costs" which are taxed by the clerk against the losing party. *See* 28 U.S.C. § 1920; *Lappin,* 2000 WL 1532765, at *12. Pursuant to Rule 54(d)(1), costs other than attorneys' fees are allowed as a matter of course to the prevailing party unless the Court directs otherwise. D. Kan. Rule 54.1(a) provides that the party entitled to recover costs shall file a bill of costs with the clerk within 30 days after the time for appeal has expired or receipt by the clerk of an order terminating the action on appeal. Therefore the Court will not assess costs at this time.

#### a. Long Distance Telephone Calls

Plaintiff seeks $384.60 in long-distance calls. Defendant argues that this expense is covered by counsel's hourly rates. The Court disagrees. The PLRA requires a significantly reduced hourly rate that does not include long-distance phone calls.[12] Furthermore, long-distance

---

11. Defendants also employed two attorneys at trial.

12. Scurlock incurred most of the long distance telephone charges before May 1, 2002 when the maximum hourly rate was $82.50.

telephone calls are typically billed as expenses in addition to hourly fees. *See Barvick v. Cisneros*, No. 95–2326–GLR, 1997 WL 417994, *16 (D.Kan. July 18, 1997); *Dutton v. Johnson County Bd. of Comm'rs*, No.93–2184–JWL, 1995 WL 337588, at *4 (D.Kan. May 26, 1995).

■■■ Defendants next argue that plaintiff provides no telephone log. Plaintiff's application does not show the purpose of every long-distance call. The total long-distance expense falls well within the bounds of reason, however, and reasonable timekeeping practices do not require counsel to itemize the purpose of each telephone call. Plaintiff's counsel was located in Kansas City, plaintiff was located in El Dorado and Lansing, and defense counsel was located in Topeka. Long-distance calls were therefore necessary and the Court awards $384.60.

### b. Fax Expenses

■■■ Plaintiff seeks $77.00 for 167 pages of faxed materials. While plaintiff seeks $0.50 per page, defendant argues that this amount is excessive. The Court finds that $0.50 per page is not excessive. *See Searles*, 64 F.Supp.2d at 1040. Defendant also argues that plaintiff does not show that the faxes were necessary. Because plaintiff has not explained why such expenses were necessary, the Court excludes them.

### c. Online Research Charges

■■■ Plaintiff seeks $225.33 for online computerized research. Defendant argues that this request is excessive because counsel could have done the same work manually. Again, the Court disagrees.

Computerized research typically saves a significant amount of manual research time, and the Court finds that an award of $225.33 is reasonable.

### d. Delivery Expenses

■■■ ■ Plaintiff seeks to recover $576.37 for local and express delivery expenses. Defendants object that plaintiff has not shown the need for such deliveries. Plaintiff provides no explanation for these expenses. On review of plaintiff's application, the Court awards $8.00 for delivery of the court file to Scurlock when the Court originally appointed him. Except as to that entry, the Court cannot determine that the local and express delivery charges were necessary. The Court therefore excludes the remaining $568.37 of delivery expenses.

### e. Postage Expenses

■■■ Plaintiff seeks $68.70 for postage expenses. Defendants argue that postage expenses are incidental costs which are ordinarily covered by counsel's hourly rates. The Court disagrees. The PLRA's significantly reduced hourly rate does not contemplate that postage expenses are included.[13] The Court awards $68.70 for postage expenses.

### f. Travel, Lodging and Meals

Plaintiff seeks $1,001.29 for travel, lodging and meals. The Court has already excluded $190.27 of these expenses. *See supra* note 10. Defendants object that a portion of the investigator's expenses include tips and movies. Counsel apparently erroneously included these items in the billing statement, but the total expenses of the investigator for two overnight trips to El Dorado are reasonable.[14] Defendants

---

**13.** Again, Scurlock incurred most of these charges before May 1, 2002 when the maximum hourly rate was $82.50.

**14.** The investigator spent on average $142.01 per trip which is less than the expenses charged by the three attorneys who billed for

comparable trips. *See* Entry dated July 9, 2002 (attorney billed $190 for overnight trip to Wichita/El Dorado); Entry dated July 19, 2002 (attorney billed $189 for overnight trip to Wichita/El Dorado); *see also* Entry 16507

do not object to the remaining travel, lodging and meals expenses. Plaintiff's entries regarding travel, lodging and meals are reasonable, especially given the travel required for counsel to visit plaintiff in El Dorado and Lansing and to take depositions in El Dorado. The Court therefore awards $811.02 in travel, meals and lodging.

### g. Medical Records And Research

 Defendants object to several entries related to "medical records and research" which total $1,388.22. In addition, plaintiff has listed additional entries for "medical records and research" which total $337.34. Plaintiff provides no explanation for the expenses. The Court therefore excludes them.

### h. Other Expenses

Defendants do not object to various other expenses (parking and a witness social security number search) which total $11.50. The Court finds that these expenses are reasonable.

In sum, the Court awards $1,509.15 in expenses.

## V. Section 1997e(d)(2)

Based on the above discussion, the Court determines that $40,374.75 is a reasonable fee and $1,509.15 is reasonable award for plaintiff's expenses. In addition, the Court finds that said fees and expenses were directly and reasonably incurred in proving an actual violation of plaintiff's rights. See 42 U.S.C. § 1997e(d)(1); Clark, 965 F.Supp. at 331. Likewise, the Court finds that the fee award is sufficiently proportional to plaintiff's relief. 42 U.S.C. § 1997e(d)(1).

Normally, these findings would end the Court's analysis. Because plaintiff is an inmate, however, Section 1997e places yet

(attorney billed $134.68 for mileage and tolls

another limit on his recovery. Under Section 1997e(d)(2),

> Whenever a monetary judgment is awarded ... a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorneys' fees awarded against the defendant. If the award of attorneys' fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

Some courts have concluded that Section 1997(e)(d)(2) gives the district court discretion to determine what constitutes a proper portion—up to 25 per cent. See Sutton v. Smith, 2001 WL 743201, at *2 (D.Md. June 26, 2001) (PLRA does not impose minimum percentage that must apply toward fees); Johnson v. Daley, 117 F.Supp.2d 889, 905 (W.D.Wis.2000) (same); Morrison v. Davis, 88 F.Supp.2d 799, 811 (S.D.Ohio 2000) (same); Collins v. Algarin, 1998 WL 10234, at *10 (E.D.Pa. Jan.9, 1998) (same). The statute is not a model of clarity, but the more plausible interpretation—especially given the other limits that Section 1997e places on both prisoners and the courts—is that the Court must automatically apply plaintiff's fee award against his damages to the extent that it does not exceed 25 per cent of the damages. See Spruytte v. Hoffner, 197 F.Supp.2d 931, 934 (W.D.Mich.2001) (reduced damages by 25 per cent); Searles, 64 F.Supp.2d at 1042 (damages must be reduced by amount of fee award up to 25 per cent of total damages); Beckford v. Irvin, 60 F.Supp.2d 85, 89–90 (W.D.N.Y. 1999) (same); Roberson, 29 F.Supp.2d at 355 (same); see also Walker v. Bain, 257 F.3d 660, 669 (6th Cir.2001) (in dicta, noting that Section 1997e(d)(2) requires 25 per cent of fee award to be paid from plaintiff's recovery).

 Plaintiff does not dispute that under Section 1997e, he is responsible for his

on trip to El Dorado).

own attorneys' fees, up to 25 per cent of his total damages. The total fee award is $40,654.75. Plaintiff's damages total $45,000, and 25 per cent of this amount is $11,250. Because plaintiff's award of attorneys' fees is not greater than 150 per cent of the judgment, plaintiff must pay $11,250 of the fee award. *See Roberson,* 29 F.Supp.2d at 355. Accordingly, defendants must pay plaintiff the remaining fee balance which is $29,404.75.

**IT IS THEREFORE ORDERED** that *Plaintiff's Application For Attorneys' Fees* (Doc. # 157) filed February 27, 2003 be and hereby is **SUSTAINED** in part. The Court awards $40,654.75 in fees and $1,509.15 in expenses. Pursuant to 42 U.S.C. § 1997e(d)(2), plaintiff shall pay his attorneys $11,250.00 of the fee award from the proceeds of the monetary judgment against defendants. Defendants must pay plaintiff $29,404.75 in fees and $1,509.15 in expenses.